JOSEPHINE E. S. McKEE v. JOHN W. BAIN, *et al.*

MEASURE OF DAMAGES, *on Failure of Title; Paramount Title bought in by Vendee.* McKee purchased a lot in Leavenworth City from Bain, taking a general warranty deed therefor, and paid a portion of the consideration therefor down, and gave two notes and a mortgage on the lot for the balance. Bain's title was defective. The property in fact belonged to Thomas. McKee expended money as costs and attorney-fees in defending the title to said lot as against Thomas, and afterward, under the provisions of the occupying claimant law, purchased the paramount title to said lot from Thomas. In a suit by McKee against Bain to recover damages for a breach of the covenant of seizin, the trial court rendered judgment in favor of McKee and against Bain, canceling said notes and mortgage and for the excess which McKee had paid out on account of said lot, (to-wit, purchase-money to Bain, costs, proper attorney-fees, and money paid for the paramount title,) over and above what McKee agreed to pay Bain for said lot. *Held,* that said judgment was correct.

*Error from Leavenworth District Court.*

PLAINTIFF IN ERROR, Mrs. *McKee,* bought of defendants in error lot No. 24, in block No. 45, in the city of Leavenworth, for $6,050, and paid $2,050 in hand, and for the $4,000 unpaid executed two notes, secured by mortgage on said premises, payable respectively in one and two years, with interest from date at the rate of ten per cent. per annum. Afterward, Alice A. Thomas brought ejectment against the plaintiff in error, and others, to recover said lot, and on the 9th of April 1870, a final judgment was rendered in favor of Alice A. Thomas for the recovery of said lot, and for costs. (9 Kas., 343.) At the time of the sale of the lot by the Bains to plaintiff in error, it was a vacant lot, and she having erected valuable and lasting improvements thereon obtained the benefit of the occupying claimant law, and the lot was valued at $5,000, and the improvements erected thereon by plaintiff in error at $15,000. Mrs. Thomas elected to take the $5,000, and the court then ordered Mrs. *McKee* to pay the same, which payment she made on the 19th of March 1872, and Mrs. Thomas then made and delivered to her a

37—11 KAS.

deed in pursuance of said order of said court.  In the defense
of the action of Mrs. Thomas to recover said lot, plaintiff in
error paid $500 as attorney's fees, and the costs recovered
against her amounted to $196.25.  An action was thereupon
instituted by the plaintiff against Bain and wife, defendants
in error, on the covenants of seizin contained in their deed
to Mrs. *McKee*.  This action was tried at the November
Term 1872 of the district court.  Judgment was given in
favor of the plaintiff, canceling the two notes given to *Bain*
for the unpaid $4,000, and the mortgage given to secure said
notes, and for the recovery of $43.50, and costs.  Mrs.
*McKee*, claiming that this judgment in her favor is too small,
brings the case to this court for review.

*Green & Foster*, for plaintiff:

The plaintiff claims that the covenant of seizin being
broken, she is entitled to the purchase-money paid by her,
and interest thereon, as well as to a cancellation of the notes
and mortgage.  "Where the covenant of seizin is broken the
measure of damages, with few exceptions, is the purchase-
money and interest." 4 Kent Com., 475, 477; 2 Washb. on
Real Prop., 728.  This is the settled rule in nearly every
state, and has also been adopted as the proper measure of
damages by the supreme court of the United States on the
covenant of *quiet enjoyment* and *warranty*. Rawle on Cov., 320.

In the case of *Dale v. Shively*, 8 Kas., 276, it is decided as
the law of this state, that "the measure of damages upon
breach of the covenant of seizin, is, as a general rule, the
consideration-money and interest," and that "in some cases
the vendee may also recover the costs and attorney's fees paid
by him in prosecuting or defending a suit in reference to the
land conveyed."  Defendants Bain claim that this case is
subject to the exception laid down by this court in *Dale v.
Shively*, that "where the vendee buys in the paramount title
his recovery is limited to the amount he pays therefor and
interest." We submit that this is not a case of a purchase
of the paramount title.  There had been a final judgment of

recovery in favor of Mrs. Thomas, and her title to the property was fully established, and there was no other title, such as is implied in the use of the relative words *paramount title*, and after the rendition of the judgment the further proceedings under the occupying claimant law no longer concerned the Bains, as between whom and Mrs. McKee the relation of grantors and grantee no longer existed; and Mrs. McKee in the further assertion of her rights could not lean upon Bain and wife, but had to contend, without recourse upon them, with Mrs. Thomas alone, touching her continued possession of the property, which possession after the date of the judgment she held not by virtue of any title derived from Bain, but by reason of the provisions of the occupying claimant law. The subsequent payment of the $5,000 was *compulsory*, and made by order of the court, and was no *purchase*, but simply the satisfying of a judgment so rendered against her in the alternative that she was compelled either to pay $5,000, the value of the lot, within a short fixed time, or lose $14,700, the value of the improvements less the rents; and if she had lost by reason of her inability to pay within the time allowed by the court, it would not be claimed by any one that Bain would be liable for her loss further than the consideration-money, interest, costs and attorney's fees. The value of her improvements would have been a total loss to her. To entitle her to the consideration-money and interest as the measure of her damages, no further eviction was necessary than the judgment for the recovery of the premises. The plaintiff then, we insist, is entitled to the $2,050 of consideration-money paid by her to Bain, and interest thereon.

But should the court be of the opinion that the plaintiff occupies the position of a purchaser of a paramount title, whose recovery must be limited by the amount paid therefor, as in *Dale v. Shively*, we insist that the court erred in the assessment of the amount of the plaintiff's damages, in allowing to the defendants interest on the two notes of $2,000 each, because the covenant of seizin was broken as soon as the deed was executed; and as it has been judicially deter-

mined that no title passed thereby, the plaintiff had a complete defense to any action on the notes, and the defendants should not be allowed *interest* on notes, the principal of which could not be collected, because of a failure of consideration. If the breach of the covenant had been merely *technical*, the interest on notes given for the purchase-money could not be rebated, as in 19 Iowa, 167; but where the breach is *actual*, the interest should be rebated. Whether the plaintiff was entitled to recover the consideration-money originally paid by her or not, there can be but little doubt that she was entitled as a part of her damages to interest on the $2,050 paid by her, and that no interest should be charged against her on the notes given for the consideration-money.

The plaintiff's right to compensation on the covenant of warranty after the loss of the land must arise on one of two bases, viz.: 1st, by contract set out in the deed, the consideration paid; or 2d, by the amount lost in getting what the deed called for, a title to the property. Should the first be the rule? If so, Bain received of McKee in cash $2,050; interest thereon for 4 years, 6 months and 18 days, at 7 per cent., $652.78; total, $2,702.78. This sum was due by the rule, that the extent of the warrantor's liability on the covenant of seizin, is, the consideration-money with interest, the notes and mortgage to be held for naught.

But should the court hold that the actual loss or cost to get the title be the measure of damages, the account should stand thus: Cash paid Bain by McKee, $2,050; interest on same for 4 years, 6 months and 18 days, at 7 per cent., $652.78; cash paid Thomas for paramount title, $5,000; interest on $5,000 for 8 months, at 7 per cent. per annum, $233; paid attorney's fees, $500; paid costs in Thomas v. McKee, $196: total, $8,631.78. Deduct the original consideration, $6,050, leaves, $2,581.78. This sum was due on a cash basis, with no value or allowance for incidental expenses attending to the suit in the courts, or allowance for time necessarily lost, each of which is actual loss resulting from a proximate cause; and, if incapable of accurate com-

putation, this rule of damage should be discarded, and the old and well-settled one of refunding the consideration paid with interest thereon should be adopted by the court. The rules for admeasuring damages is one for the courts to apply according to circumstances of each case.

When the warrantor treats his warrantee as his agent, comes to defend the title when it is attacked, meets and pays the expenses of the litigation, tries to lift the burden of the contest from the shoulders of his vendee, and when the title is lost tries or assists in procuring the paramount title, then the courts will or should give to such a warrantor the benefit of any saving in getting in the title, although it may be less than the purchase-money with interest; but in no event where the foregoing things have been done, will the court require the warrantor to pay out a greater sum than the original purchase-money with interest, as this is the limit of his liability unless he has been guilty of fraud. Here the warrantor was notified to defend the suit for title, and neglected to do so, was notified and requested to pay for the outstanding title and refused, rendered no aid nor paid any expenses, recognized no liability to McKee, did no act tending to establish any relation of principal in himself or agency in McKee, and at last makes an open fight as a creditor, and ignores every principle of equity; and, after his warrantee has been by operation of law compelled to pay and account for rents of the lost property, and to save a $15,000 building has paid without the aid of the warrantor an arbitrary and unagreed value of $5,000 for the property, this same party, who would invoke an equitable rule in assessing damages, seeks to collect the notes with 10 per cent. interest given for a void title, and to sell the title acquired without his aid, which he had refused to help pay for.

There are three inquiries necessary in this case to arrive at a just, legal and equitable determination of the right on the one part and liability on the other: 1st.—Shall a warrantee pay interest on deferred payments to his warrantor, and also rents for the property to the owner of a parmount

title during the same period of time? 2d.–Shall a warrantee, who by operation of law or by a sort of legal duress, or power given by law to the owner of the paramount title, to take improvements, with no right of choice in the warrantee, after eviction, and who can make no contract in regard to the outstanding title, be held in law as a purchaser? 3d.–Shall a party, who has been let into the possession of land by his warrantor and grantor, and who owes certain duties such as exist between principal and agent, and landlord and tenant, before any eviction or disturbance of quiet enjoyment, continue under the same obligations after judgment against him? This imperative call is by operation of law, and not by virtue of any agreement or contract, in which the plaintiff McKee is consulted, in which she can have no say, consent, will, or choice, however much she may have desired to surrender the building and take the value set thereon, or in a declining market for real estate that the lot should be taken by the owner of its paramount title and she be permitted to relieve herself of the difficulty in which Bain, the defendant, had placed her. She had no escape; like a statue, she could utter no opinion or choice. Yet Bain says she was a free agent, and her acts must inure to his, Bain's, benefit. How if the lot by operation of law had been valued at $10,000! would Bain then have claimed that he was bound by that legal determination? Hardly. His maximum liability was the purchase-money with interest.

The distinction is made in the books between a case "where the law creates a charge upon a party," and where "the party by his own contract creates a duty or charge upon himself." 2 Pars., 672, note; Aleyn, 26; 2 Kern., 99; 4 Ellis & B., 963; 7 Ellis & B., 763. In the case at bar every element of a contract is wanting. The deed from Thomas to plaintiff was part of the machinery or process of the law used to carry out the judgment and order of the court after suit. Notice to the warrantor, and the judgment of the court, fixed the title, and determined the relations of the parties thereto. The law gave the election to Mrs. Thomas. Mrs. McKee had no

election.   The law gave McKee's building to Thomas on her failure to pay the $5,000.

*Clough & Wheat,* for defendants:

1. The plaintiff obtained possession of the lot under and by virtue of her purchase from the defendants.   And because of having retained such possession, and having made improvements thereon, she was enabled to make such purchase of the paramount title for that $5,000, after having incurred no more than $596.25, costs and expenses in the matter, for which $5,596.25 she is, by the judgment of the court declaring said notes satisfied and adjudging the Bains to pay her $43.50, the amount of the difference between the sum due on the notes and said $5,596.25 fully indemnified and saved harmless.   Still she is not satisfied; but because the plaintiff has so paid said $5,596.25 to be enabled to keep the lot, she now wishes to make a profit out of the calamity to the Bains. That the plaintiff could not recover more than said sum of $5,596.25 from the Bains, see the opinion of this court in the case of *Dale v. Shively;* also, cases in 51 Ill., 374; 12 Peters, 264; 13 Smedes & M., 553; Freeman's Ch., 333; Meigs, 181, 185; Cooke's, 211; 6 Monroe, 233; 4 Monroe, 291; 9 Metcalf, 68; 2 Johns. Ch., 30; 3 Pick., 460; Rawle on Covenants for Title, (2d ed.,) 101, 122, 168, 628, 638, 642, 654, 659, 670, 688; 6 Ohio St., 207.   The Bains were entitled to have the interest computed on the notes at the rate of ten per cent. per annum until such time as plaintiff had a claim against them which would equal or exceed the interest then due.   As plaintiff's claims would not equal the interest on the notes until she paid the $5,000, of course it was proper to compute interest to the day of such payment, and then strike a balance, which the court did.

2. Plaintiff was not turned out of possession of the lot, nor did the judgment recovered by Mrs. Thomas amount to an eviction; (6 Barb., 171–2; 11 S. & M., 206; Rawle on Cov. for Title, 252, note 2; id., 688, note 3; 6 Ohio St., 207;) and therefore plaintiff was not entitled to any relief on basis

of an eviction; and if not, then she was not entitled to any relief unless the law authorized her under the circumstances of the case to buy the lot from Mrs. Thomas and charge the cost thereof to the Bains; all which was allowed plaintiff. After the plaintiff paid that $5,000, she only had a claim against the Bains for $41.82, which is all the Bains should have paid plaintiff on the 19th March, 1872, (if anything,) and all they should in any case have paid toward getting the Thomas deed after Thomas was ordered to make it for the $5,000, assessed value of the lot.

3. The costs in the ejectment suit were not paid by plaintiff until after the commencement of this action of *McKee v. Bain;* and therefore we submit the judgment should have been in favor of Bain for such sum of $169.85, less the aforesaid amount of $41.82, to-wit, $128.03; and we submit the district court should have rendered judgment for said sum of $128.03, and for costs, and foreclosure of the mortgage, and sale of said lot against plaintiff McKee; and we submit that Bain is now here entitled to such judgment. 40 N. Y., 283; 6 Ohio St., 207. These cases show that where a party is not turned or kept out of possession, a recovery can only be had after payment.

4. Notwithstanding plaintiff's possession, and purchase in right of such possession, under her deed from defendants, she wishes to have a part of the contract of which that deed was a part, canceled, and considered as rescinded. Of course the deed the Bains made to plaintiff, and the notes given by plaintiff to Bain as part of the consideration for the execution of said deed, and the mortgage made by plaintiff to secure the payment of those notes, were and are all parts and parcels of one contract; and plaintiff cannot rescind or cancel one part thereof, and enforce or consider any other part thereof as operative and still in force; a contract cannot be rescinded as to one party and remain in force as to the other. 34 Ill., 468; 31 Ind., 18; 14 Maine, 364; 1 Metcalf, 550; 5 Hill, 390; 36 N. H., 449; 19 Texas, 1; 16 Mich., 40; 41 Ill., 195. There is no pretense of any fraud in this case.

The opinion of the court was delivered by

VALENTINE, J.: This was an action for the breach of certain real covenants. On the 29th of April 1868, Josephine E. S. McKee bought of John W. Bain and Mary M. his wife a certain lot in the city of Leavenworth taking a general warranty deed therefor, and in consideration thereof paid $2,050 cash down and gave her two promissory notes, each for $2,000, drawing interest from date at the rate of ten per cent. per annum, one due in one year and the other due in two years; and she also gave a mortgage on said lot to secure the payment of said notes. Mrs. McKee took possession of said lot under said deed, and made lasting and valuable improvements on the lot. Afterward Alice A. Thomas by an action in which Mrs. McKee was a party, and of which the Bains had notice, showed that she, Mrs. Thomas, had the paramount title to said lot. Mrs. McKee expended $196.25 as costs in defending said suit, and also paid $500 therein as attorney-fees, "but the court (below) finds from the testimony that any sum over four hundred dollars paid by the plaintiff (Mrs. McKee) as attorney-fees was unreasonable and excessive." On the 19th of March 1872 Mrs. McKee, in accordance with the provisions of the occupying claimant law, (code, §§ 601 to 613,) bought in the paramount title of Mrs. Thomas and paid therefor $5,000. Upon these facts Mrs. McKee asked in the court below a judgment against the Bains for the amount she paid the Bains, for the amount she paid as costs and attorney-fees, with interest on these several amounts, and also asked that the said notes and mortgage should be canceled, and that the apparent incumbrance resting upon her title by virtue of said mortgage should be removed. On the 16th of November 1872 the court below rendered judgment in favor of Mrs. McKee and against the Bains for $43.50, and that said notes and mortgage be canceled and that the lot be free from any incumbrance by reason thereof. Mrs. McKee now seeks a reversal or modification of said judgment, claiming that the same should have been

for a much larger amount. We think the decision in the case of *Dale v. Shively*, 8 Kas., 276, substantially determines all the questions involved in this controversy. The covenant of seizin is broken as soon as the deed is made, if the title attempted to be conveyed is bad; and when the vendee afterward buys in the paramount title the measure of his damages as against the vendor is, as a rule, the amount with interest it necessarily costs to obtain the paramount title up to the amount of the purchase-money, with interest.

In some cases the vendee may also recover the costs and attorney-fees necessarily paid by him in prosecuting or defending a suit with reference to the land attempted to be conveyed. In the present case we think Mrs. McKee is entitled to recover from the Bains just the excess of what she has necessarily and actually paid over and above what she agreed to pay to the Bains. For instance: she agreed to pay as follows: Cash down, $2,050; two notes, $4,000; interest on the notes to March 19, 1872, $1,555.55; total agreed to be paid up to March 19, 1872, $7,605.55. She actually and properly paid as follows: Cash down, $2,050; attorney's fees, $400; costs, $196.25; for paramount title, March 19th 1872, $5,000; total paid March 19th 1872, $7,646.25. She therefore paid $40.70 more than she agreed to pay for the lot. The judgment in this case was rendered November 16th 1872, for $43.50, a little more than said $40.70, with interest. As the plaintiff in error has raised some question about taking into consideration the interest on said notes we should say that she agreed to pay the interest as well as the principal, and one must be taken into consideration just as much as the other.

The title of the Bains to said lot was derived through judicial proceedings, and although defective on account of irregularities in the judicial proceedings yet it cannot be wholly ignored. The title was apparently good. The Bains acted in good faith in selling, and Mrs. McKee acted in good faith in purchasing and defending. Mrs. McKee obtained possession of said lot under and by virtue of Bain's title,

and she held possession thereunder for nearly four years without paying anything therefor to Bains, or to any one else except what she paid﹒as consideration for the lot; and she still continues to hold such possession, never having been in fact dispossessed. Bains' title, though defective, rested as a cloud upon the paramount title. By virtue of said conveyance from Bains to Mrs. McKee, this cloud was extinguished, or rather transferred from the Bains to Mrs. McKee. This was something of value. And after the action between Mrs. Thomas and Mrs. McKee was determined, the right of Mrs. McKee to compel Mrs. Thomas to purchase Mrs. McKee's improvements on said lot, and pay therefor $14,700 or to sell the lot to Mrs. McKee under the occupying claimant law for $5,000, was founded solely upon the title which Mrs. McKee obtained from the Bains. The title therefore which she got from Mrs. Thomas, had its origin in the title she got from the Bains. Besides, Mrs. McKee appeals to a court of equity to cancel said notes and mortgage. Said mortgage was a cloud, and an apparent if not a real incumbrance, upon the title to said lot. Is the removal of said cloud, and said apparent incumbrance, of no value? Now, by virtue of the conveyance from the Bains to Mrs. McKee, and the judgment in this case, Mrs. McKee has obtained a good title to her lot free and clear from all incumbrances or clouds, all that she bargained for, or expected to get, and all that she has any right to expect; and she has paid to all persons in the aggregate only what she agreed to pay to the Bains. She has lost nothing by the failure of Bains' title. The Bains have lost thereby $5,599.05, principal and interest up to March 19th, 1872, yet they acted in just as good faith as Mrs. McKee. It is not necessary in this case to decide what would have been the rights of the parties if the amount which Mrs. McKee expended in defending said suit, and in buying in the paramount title, had been less than the amount of said notes and interest. We think the judgment of the court below was correct, and therefore it must be affirmed.

All the Justices concurring.