## LOUIS HAMMERSLOUGH V. MARGARET A. HACKETT.

COVENANTS OF SEIZIN—*Action for Breach—Damages.* A conveyance · of land was made containing covenants of seizin and good right to convey and against incumbrances, linked with a general covenant of warranty to the grantee, her heirs and assigns; but the title of the grantor was defective at the time of the conveyance. The grantee subsequently gave a mortgage upon the land, which was thereafter foreclosed, and a sale thereof made, after which several conveyances of the land were made, each time for a substantial consideration. Prior to the foreclosure and sale there was no adverse possession nor hostile assertion of title or interest in another than the grantee; and after the foreclosure and sale the purchasers and · subsequent grantees were not disturbed in their possession or ownership by any adverse claimant. After the original grantee had parted with her title and interest, and after the foreclosure and sale, she brought an action against her grantor to recover damages for a breach of the covenants of seizin and of right to convey. *Held,* . That she was not then entitled to recover more than nominal damages.

*Error from Wyandotte District Court.*

ACTION brought by Margaret A. Hackett against Louis Hammerslough to recover damages for a breach of the covenants of seizin and of right to convey, contained in a conveyance executed by Hammerslough to Hackett on January 10, 1879. The petition sets forth that at the time last mentioned,. in consideration of $2,000, Hammerslough and wife made a conveyance of 280 acres of land in Coffey county, and covenanted that they were "lawfully seized of an indefeasible estate in fee-simple in said premises, and that they had good' right to convey the same." But in fact they had no estate therein nor any right to convey said premises at the time said conveyance was made. Judgment was asked for $2,000, with interest from January 10, 1879. Hammerslough answered, admitting the making of the deed and covenants, but denying that the consideration was as alleged in the petition. He · averred that on October 6, 1866, G. W. Campbell was the owner of the land and then mortgaged it to Levison & Co.;. that this mortgage was foreclosed and a sale made to Levison.

& Co., who thereby acquired the title in fee-simple; that on October 5, 1874, the partners of Levison & Co. conveyed the land to Hammerslough, but that the deed of conveyance, which was sent to the register of deeds' office for record, was lost; that he entered upon the land, paid taxes thereon, and redeemed the same from tax sale and retained title thereto until he conveyed the land to Hackett; that on October 25, 1874, he conveyed the land to Julius Hammerslough by a deed absolute in form, but which was in fact a mortgage to secure a debt which he owed to Julius Hammerslough; that this debt was discharged before he conveyed the land to Hackett, and that Julius Hammerslough, on May 24, 1880, reconveyed the land to Louis Hammerslough; that in 1881, having learned that the original deed of Levison & Co. to himself had been lost, he procured a new deed from them to himself, the original of which he tendered to Hackett or her assigns. He alleged that G. W. Campbell had died about three years before that time, and that since the institution of this action he had acquired all the title which the widow and heirs of said Campbell might have in the lands, and tendered a copy of their conveyance. He further alleged that about February 27, 1879, Margaret A. Hackett and her husband mortgaged the land to secure a note which they had given; that the note was not paid, and it and the mortgage were assigned to Lathrop & Smith, who brought a foreclosure proceeding in the district court of Coffey county, where they obtained a decree of foreclosure, under which a sale was made conveying all the right, title and interest of the Hacketts in the premises. He further averred that the deed declared on by Hackett contained, in addition to the covenants of seizin and right to convey, a further covenant warranting and defending the title to her and her heirs and assigns, and that therefore the title conveyed to and acquired by Hammerslough had inured to and was vested in Lathrop & Smith, and that they and their assigns had never been disturbed in their possession.

At the July term, 1889, a trial was had before the court,

N. Cree, judge *pro tem.*, presiding, and the following findings
of fact and law were made:

## "FINDINGS OF FACT.

"1. On the 10th day of January, 1879, the defendant ex-
ecuted a deed of conveyance of the following described prem-
ises to the plaintiff, to wit: The south half and the northeast
quarter of northwest quarter of section number 2, and the
southwest quarter of section number 11, both in township
number 21, of range 16, and containing 280 acres, more or
less, in Coffey county, state of Kansas.

"2. In the said deed of conveyance there was contained
the following covenants, to wit: 'The said Louis Hammer-
slough and Rachel Hammerslough, his wife, hereby covenant-
ing that they are lawfully seized of an indefeasible estate in
fee in the premises herein conveyed; that they have good
right to convey the same; that the said premises are free and
clear of any incumbrance done or suffered by them or those
under whom they claim; and that Louis Hammerslough will
warrant and defend the title to the said premises unto the
said party of the second part, and unto her heirs and assigns
forever, against the lawful claim and claims of all persons
whomsoever.'

"3. The consideration received by defendant for the said
deed was a conveyance by plaintiff and her husband, Thomas
Hackett, to the defendant, of a certain house and lot in Kan-
sas City, Mo., the title to which was in said Thomas Hackett
at the time of the execution by them of the said deed to Louis
Hammerslough; the said house and lot in Kansas City, Mo.,
was incumbered with a mortgage at the time of the convey-
ance thereof to defendant, but the value of the interest of
said Thomas Hackett in the same, after deducting the said
mortgage incumbrance, was $2,000 at the time it was con-
veyed to defendant. The said lands in Coffey county, state
of Kansas, were on the 10th day of January, 1879, deeded
to plaintiff in exchange for the said house and lot, by agree-
ment between the defendant and said Thomas Hackett, and
the deed to the said lands in Coffey county, state of Kansas,
was delivered to and received by plaintiff.

"4. In June, 1868, one L. Levison & Co. commenced an
action in the district court of the state of Kansas for Miami
county, to foreclose a mortgage upon the said lands in Coffey
county, state of Kansas, and also upon certain other lands in
Miami county, state of Kansas, it being averred in their peti-

tion in said suit that said mortgage upon said lands had theretofore, in 1866, been executed to them by one G. W. Campbell; and on the 29th day of September, 1873, in pursuance of a judgment and further proceedings in said cause against said Campbell, the sheriff of Coffey county, state of Kansas, executed and delivered to said L. Levison & Co. a deed to all the· said lands in Coffey county, state of Kansas.

"5. In March, 1874, the said L. Levison & Co. executed a conveyance of all the said lands in Coffey county, Kansas, to defendant Louis Hammerslough, who afterwards, and on the 25th day of March, 1874, executed a deed of conveyance with· covenants of warranty of all of said lands to one Julius Hammerslough.

"6 On the 14th day of May, 1877, the county clerk of Coffey county, state of Kansas, executed to one Austin Corbin a tax deed to the south one-half and the northeast quarter of the northwest quarter of section 2, township 21, range 16 east,. Coffey county, state of Kansas.

"7. The tract of land last described was patented to J. W. McDonald, and by him conveyed to George W. Campbell, in October, 1858.

"8. The southwest quarter of section 11, township 21, range 16 E., Coffey county, state of Kansas, was patented to· one Wm. R. Campbell in 1856.

"9. Wm. R. Campbell died in 1858, leaving a widow and eight children, of whom G. W. Campbell was one.

"10. On the 27th day of February, 1879, the plaintiff and her husband executed a mortgage of the lands conveyed by· defendant to plaintiff on the 10th day of January, 1879, which mortgage was afterwards assigned to Lathrop & Smith, and by them afterwards foreclosed in Coffey county, Kansas, and on the 29th day of July, 1881, a sheriff's deed to the said lands was executed by the sheriff of Coffey county, state of· Kansas, to the said Lathrop & Smith, who on the 4th day of May, 1883, conveyed said lands to George E. Manchester by a deed of quit-claim for the consideration of $950, and on the· 18th day of May, 1883, the said Manchester, by a deed with covenants of warranty, and for an expressed consideration of $1,025, conveyed the said lands to D. V. Mott, who, on the 31st day of July, 1883, by a deed with covenants of warranty, and for an expressed consideration of $1,200, conveyed 160 acres of said lands to one T. J. Studebaker, who on the same day executed a mortgage of the same lands back to said Mott.

"11. At the time the said lands in Coffey county, Kansas,

were conveyed to plaintiff by defendant, they were vacant and unoccupied, and the plaintiff never took possession of the same."

"CONCLUSIONS OF LAW.

"1. The said Austin Corbin was, on the 10th day of January, 1879, the owner of the south half and the northeast quarter of the northwest quarter of section 2, township 21, range 16 E., Coffey county, state of Kansas, containing 120 acres.

"2. On the 10th day of January, 1879, the said Julius Hammerslough was the owner of only an undivided one-sixteenth interest in the southwest quarter of section 11, township 21, range 16 E., in Coffey county, state of Kansas, that being the entire interest that passed to him by virtue of the deed from the sheriff of Coffey county, Kansas, September 29, 1873, to L. Levison & Co., the deed by the latter to defendant in March, 1874, and the deed by defendant to said Julius Hammerslough in 1874.

"3. The conveyance by defendant to plaintiff, made January 10, 1879, contained a covenant that defendant was lawfully seized of an indefeasible estate in fee in the premises described in said deed of conveyance, and had good right to convey the same, the said covenant being one of seizin, and at the time said covenant in said conveyance was made by defendant to plaintiff he owned no estate or interest in the lands described in said deed and had no title to the same or to any part thereof, and the said covenant was thereby immediately broken.

"4. The defendant is not entitled to any abatement or mitigation of damages on account of the mortgage of the lands described in the said deed of January, 1879, and made by plaintiff and her husband to Foreman & Freidlander and by them assigned to Smith & Lathrop and foreclosed by the latter, nor on account of such foreclosure and the sheriff's deed thereunder to said Lathrop & Smith.

"5. The plaintiff ought to recover of and from the defendant the sum of $2,000, with interest thereon at the rate of 7 per cent. per annum from the 10th day of January, 1879."

Exceptions to the findings of fact and conclusions of law were taken and overruled, and judgment was entered against the defendant for $3,478.18. *Hammerslough* brings the case here for review.

*Cook & Gossett*, and *Stevens & Stevens*, for plaintiff in error.

*Geo. H. English*, *W. C. Wells*, and *Junius W. Jenkins*, for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: It is obvious from the findings and conceded facts that Louis Hammerslough did not have the quantity and quality of title which he undertook to convey to Margaret A. Hackett in his deed of January 10, 1879. He claimed title to the land through a conveyance made to him on March 5, 1874, by Levison & Co., who it would seem obtained all the title and interest of George W. Campbell through foreclosure proceedings and a sale and conveyance made to Levison & Co. on September 29, 1873. The mortgage had been given by George W. Campbell on October 6, 1866, and it is contended that as to 160 acres of the land mortgaged by Campbell, and which was conveyed by Hammerslough, Campbell only had such a share therein as descended to him from W. R. Campbell, who was his father and the patentee of the land. Although the plaintiff in error contends that George W. Campbell was the only child of W. R. Campbell and his only surviving heir, there is testimony tending to show that W. R. Campbell left surviving him a widow and eight children, and there is nothing to show that there was a transfer or relinquishment of their interest to George W. Campbell. A portion of the land appears to have been sold for taxes, and on May 14, 1877, a tax deed was executed to Austin Corbin for the same; but in October of the same year Corbin reconveyed the land to Coffey county, and Hammerslough subsequently redeemed the land from the tax sale and paid the taxes which had been charged against it. After Louis Hammerslough had obtained the deed from Levison & Co., he sent the same to the register of deeds in Coffey county to be recorded, but for some reason it was not entered of record. It was mislaid or lost and was not found until after the commencement of these proceedings. There was therefore no rec-

45 — 48 KAS.

cord of title in Louis Hammerslough on January 10, 1879, when the conveyance in question was made. On March 5, 1874, Louis Hammerslough made a conveyance of the land to Julius Hammerslough, which was in form a warranty deed, but the claim is that it was merely given as a security for a debt, and that the debt had been paid and discharged prior to the time of the conveyance to Hackett. In an effort to perfect the title Louis Hammerslough obtained from Julius, on May 24, 1880, a quitclaim deed for the land, and on February 25, 1882, a like conveyance was obtained from the widow and heirs of George W. Campbell. On July 22, Louis Hammerslough, not being able to find the original deed from Levison & Co. to himself, procured a second deed from them, which recited the making of the former deed and that it was supposed to be lost or destroyed; and with a view to further perfect his title, he obtained from Austin Corbin, on March 25, 1886, a conveyance which intended to transfer from Corbin to Hammerslough whatever interest remained in Corbin by virtue of the tax sale of 1874. It thus appears that the title was so far defective when the Hackett conveyance was made that there was a breach of the covenants of seizin and of right to convey.

From the conclusion which we have reached, it is unnecessary to determine how far the title of Hammerslough fell short of a complete title at the time of his conveyance to Hackett. The covenants of seizin and of right to convey were broken at the time of the execution of the conveyance, and if Hackett had brought her action upon the covenants at once, and tendered a reconveyance of the same to Hammerslough, she would have been entitled to recover the consideration paid, with interest. Instead of availing herself of this opportunity, however, she accepted the deed and the land, and by her act and the operation of law she has transferred the land to others. On February 27, 1879, she, with her husband, executed a mortgage upon the land to Foreman & Freidlander, to secure the payment of a promissory note for $600, which was due March 1, 1880. The debt and mortgage were afterward assigned to Lathrop & Smith, and default being

made, foreclosure proceedings were begun, which resulted in a decree of foreclosure, and a sale of the premises thereunder was made to Lathrop & Smith on July 29, 1881. Since that time there have been several conveyances of the land, and each transfer has been for a substantial consideration.

It is true that the defendant in error insists that the foreclosure proceedings are not sufficiently valid to make them effective, but upon this question she is concluded by the finding of the court that there was a foreclosure and a sale. No cross-petition in error has been filed by her, and therefore she is in no position to complain or to secure a modification of the finding. The defect asserted relates to insufficiency of notice, but it satisfactorily appears that there is nothing substantial in the objection, as the defect has been remedied. (*Hammerslough v. Hackett*, 30 Kas. 57; *Lathrop v. Hackett*, 36 id. 661.) She has been wholly divested of title, and Lathrop & Smith and the subsequent grantees not only acquired all the title that was then in her, but which might inure to her by reason of the covenants in the conveyance which she received from Hammerslough. The conveyance to her contained all the usual covenants including warranty of title running to her heirs and assigns. Her alienees are entitled to the benefits of the covenants for title which run with the land, and they will take the subsequently acquired title of her grantors by inurement. (Gen. Stat. of 1889, ¶ 1114.) When she parted with all her

Covenants of seizin—action for breach—damages.

interest in the land she had no longer any right or control over the covenants which ran with it, and thereafter had no right to recover more than nominal damages for the technical breach of the covenants of seizin and of right to convey. During her ownership there was no adverse possession of the land nor any hostile assertion of paramount title in another. She suffered no actual loss, and the parties who claimed through her it appears have not been disturbed in their possession or ownership by any adverse claimant. With a view of recovering substantial damages, she tendered in her reply a reconveyance to Hammerslough, but this was wholly ineffectual, as the title or right to the benefit

of the covenants had passed from her and had vested in her assigns. Lathrop & Smith, who purchased at the sheriff's sale, and their grantees, are at liberty to take advantage of the covenants for title whenever a breach occurs, to the extent of the actual loss sustained. The sheriff's deed conveyed to them as full and complete a title to the land as she could have given at any time after it became liable to the judgment, and fully conferred on them the benefit of the covenants for title. (Civil Code, § 459; Rawle, Cov. Tit. 213.) That she is entitled to no more than nominal damages has practically been determined by this court in *Scoffins v. Grandstaff,* 12 Kas. 467. It was there declared that where personal covenants are connected with the sweeping covenant of warranty, and the covenant of seizin is broken, but the grantee has parted with the property, and has never been disturbed in his ownership nor paid anything in purchasing in the paramount title, nor became liable to pay anything, he can at most recover only nominal damages from the grantor for the breach of the covenant of seizin. (See also *Morrison v. Underwood,* 20 N. H. 369; *Baxter v. Bradbury,* 20 Me. 260; *Kimball v. Bryant,* 25 Minn. 496; *Burke v. Beveridge,* 15 id. 205; *King v. Gilson,* 32 Ill. 349; *Brandt v. Foster,* 5 Iowa, 287; *Prescott v. Trueman,* 4 Mass. 627; *College v. Cheney,* 1 Vt. 340; *Garfield v. Williams,* 2 id. 327; *Reese v. Smith,* 12 Mo. 344; *Wilson v. Forbes,* 2 Dev. 30; *McCarty v. Leggett,* 3 Hill, 134; *Colby v. Osgood,* 29 Barb. 339; *Boon v. McHenry,* 55 Iowa, 202; Rawle, Cov. Tit., §§ 179, 180, 215, 220, 248; Tied., Real Prop., § 851; Devl., Deeds, § 894.)

The judgment of the district court will be reversed, and the cause remanded for further proceedings.

All the Justices concurring.