## PACIFIC BOND & MORTGAGE CO. v. ROHN et al.

No. 6371. Decided February 3, 1942. (121 P. 2d 635.)

See 14 Am. Jur., 527; 21 C. J. S. Covenants, sec. 42.

*Shay & Shay,* of Cedar City, and *Cline, Wilson & Cline,* of Milford, for appellant.

*Theodore Bohn,* of Beaver, for respondents.

WOLFE, Justice.

Appeal from a judgment of "no cause of action" in the Fifth Judicial District Court of Beaver County, Utah. Plaintiff brought an action to recover $400 claimed as damages for breaches of a warranty against encumbrances contained in a deed dated January 26, 1931, executed by the defendants, as grantors, to E. C. McGarry, as grantee, covering two lots in Salt Lake City. These lots were subsequently conveyed to the McGarry Investment Company and later to plaintiff corporation. The complaint alleged that defendants breached the warranty against encumbrances by their failure to pay taxes for the years 1930 and 1931 and a special improvement assessment in the amount of $177.40, which Salt Lake City had levied against the lots in 1929. The lots were, in 1936, sold by the city to pay the assessment and plaintiff was ejected therefrom, thus giving rise to the cause of action set out in the complaint.

At the time the lots were conveyed to McGarry, defendants were obligated to the McGarry Investment Company on a note in the amount of $720 on which some payments had been made, leaving a balance due of $687.52. The testimony for plaintiff and defendants differs widely as to the circumstances connected with the sale of the two lots. Both sides agree upon the amount of $400 as the consideration for the two lots. Plaintiff's version of the transaction is that Rohn approached McGarry with a view to settling the obligation on the aforementioned note, paid $450 by check and gave a deed for the two Salt Lake City lots to cover the balance. Although the balance on the note after payment of $450 would have been only $237.52, plaintiff seeks damages of $400 as the agreed consideration for the lots, accounting for the difference by saying there may have been some other obligation of defendants covered by the balance, though recalling none and offering no proof thereof, and stating further that though the lots were valued at $400 it was possible they would have to be resold at a lower figure.

Countering this version, defendants sought to show that when settlement of the notes was first discussed on October 8, 1930, Rohn offered to convey the two lots to McGarry as a $400 payment on the note, and then gave McGarry a check for $450 which was to cover the balance of the note which would be about $287.50, and the city's special assessment of $177.40. It will be noted that defendants' view of the transaction more nearly accounts for the amounts paid by them in cash and the lots, particularly in the light of Rohn's explanation that in computing the balance due on the $720 note, they did not attempt to figure the exact interest accrued. Rohn further testified that McGarry agreed to pay the special assessment, having received from Rohn an additional amount above that owing sufficient so to do. The findings of the court were in accordance with the contention of defendants.

The issue on appeal is as to the admissibility of certain evidence and the consideration thereof by the trial court in reaching its decision. The evidence which appellant contends was not admissible concerned the circumstances and transactions surrounding the giving of the deed, appellant contending such evidence would vary the terms of the written instrument. It appears that the warranty deed dated January 26, 1931, here sued on, was given merely to convey the wife's inchoate statutory dower interest; that the actual contract was entered into and a warranty deed given in the early part of October, 1930. By this contract it was agreed that the property would be conveyed to the McGarry Investment Company subject to the general taxes for 1930. (This is itself shown by appellant's evidence in its Exhibits 4 and 5.) That an additional amount of $450 would be given by Rohn to satisfy the balance owing by him to the company and in addition pay the special improvement taxes then due and owing to Salt Lake City. According to respondents' evidence—which of course is disputed by appellant—there was sufficient money over and above what was due the Investment Company from the Rohns to pay the special im-

provement taxes; that this amount was given to satisfy said taxes; and that McGarry accepted the money with that understanding and promised to pay the same to satisfy the special improvement tax lien. It is appellant's contention as above stated, that this evidence was inadmissible since it tends to alter the terms of the deed as to the warranties therein contained.

First, what about the special improvement taxes? Certainly the evidence does not tend to alter the warranty as to those. On the contrary, the evidence is directed to the "satisfaction" of that warranty. Respondents do not contend that the deed was not supposed to warrant against special improvement taxes but rather that the warranty against such taxes was fulfilled by paying the taxes to the grantee McGarry.

But how could a payment of the amount of the taxes to the grantee satisfy the covenant against such taxes? This question is answered by what this court said in the case of *Soderberg* v. *Holt,* 86 Utah 485, 46 P. 2d 428, 433, 99 A. L. R. 1041, as to the nature of a covenant in a deed against encumbrances. We there held:

"If on the other hand, the covenant against encumbrances is looked at according to its true content and its true intention, it should be looked at as a covenant to indemnity."

Since the nature of the covenant is to "indemnify" it is quite apparent that such could be fulfilled by indemnifying before any actual loss occurred. And that was just what respondents' evidence discloses was done in this case. Instead of paying the taxes to the taxing authority the grantor in this case paid them to the grantee —thereby satisfying the covenant insofar as this encumbrance was concerned.

Nor can appellant, as a subsequent grantee, urge that as such it is not bound by the transactions between respondent and the original grantee. The trial court found that E. C. McGarry, the original grantee, was a director and manager of appellant company at the time it received the

deed to the property and that the company "thereby had notice and knowledge of the matters hereinabove mentioned." Having such notice appellant company is in no position to assert that it has been damnified by a breach of warranty on the part of respondent. The knowledge and notice appellant had which now precludes this action was not that there were actually encumbrances on the property when respondent conveyed the same to McGarry, but rather that the warranty of no encumbrances had been *satisfied* by respondent by indemnifying McGarry in advance on account of said encumbrances. One who takes a deed to real property with knowledge that a covenant running with the land, made by a remote grantor, has been *satisfied* or *indemnified against* by such remote grantor as to his grantee may not thereafter bring an action against that grantor for a breach of the covenant which the latter has theretofore satisfied or indemnified against.

Having determined that the evidence shows the appellant cannot recover for the special improvement taxes, we now pass to a consideration of the general taxes for 1930 and 1931. There is no dispute that the taxes for 1930 were due and owing even at the time of the original transactions hereinabove referred to. On the other hand, there appears to be no serious contention on the part of appellant that the warranty in the deed included the 1930 general taxes. Appellant in introducing its evidence conclusively proved that there was no intention to include these taxes in the covenant. (See plaintiff's Exhibits 4 and 5.) Having thus itself established that there was actually no intention to warrant against 1930 general taxes and that such was within the knowledge of appellant company and admitted by it, appellant may not urge that the trial court erred in finding to that effect. Nor does it appear that appellant does so in setting out its "Statement of Errors Relied On" for reversal.

Finally, as to the general taxes for 1931: It is strongly urged by appellant that the court may not go back of this

deed to determine its effect, that the parol evidence in this regard was inadmissible, and that the deed being dated January 26, 1931, the general warranty against ■ encumbrances included a warranty as to 1931 general taxes. Conceding, for the moment, that the argument in this respect is sound, nevertheless it does not follow that appellant is entitled to recover. On the other hand, even though there may have been a technical breach of warranty for failure to pay the 1931 taxes appellant cannot prevail in this action. This is not a suit for a "technical" breach of warranty, but rather to recover for damages which have resulted from such breach of warranty. Therefore, it must be shown that the breach of warranty occasioned the damages suffered. See *Soderberg* v. *Holt,* supra. We there held that, except for nominal damages for a technical breach of warranty, the grantee of land or his successor cannot recover on a covenant against encumbrances until he has been damnified by the breach thereof—either by suffering a loss as to the property or by discharging the encumbrance.

In the instant case appellant has suffered no injury by reason of the failure to pay the 1931 general taxes. True, if it had paid those taxes it would have been damnified to that extent but the taxes were not paid. Appellant claims damage by reason of being evicted from the ■ premises. But such eviction did not result from a failure to pay the 1931 taxes. Rather it resulted from a failure to pay the special improvement taxes by reason of which the property was sold by Salt Lake City, and from a failure to pay the 1930 taxes by reason of which the property was sold by Salt Lake County. The fact that Salt Lake County may have required the purchaser of the property to pay an amount sufficient to satisfy the 1931 taxes as well as the 1930 taxes—for which the property originally went to tax sale—in no way helps appellant's case. It has certainly been injured no more than it would have been had there been no delinquency as to the 1931 taxes.

The case of *Paloni* v. *Beebe*, 100 Utah 115, 110 P. 2d 563, has no application here. In that case we held that parol evidence was not admissible to show an alleged oral agreement on the part of the grantee to assume the special improvement taxes as a part of the consideration for the purchase of the property where, in the written agreement, the stated consideration formed an integral part of the contract and there was also a specific covenant against taxes in the agreement.

In the instant case the oral evidence introduced was not considered as "altering" the terms of the written contract but rather as proving that the covenants therein set out had been satisfied. Nor did the trial court find that the oral evidence altered the covenant but rather that certain money was received "in payment of taxes and special improvement assessments then owing upon the lots referred to."

From what has been said above it follows that the judgment of the trial court should be affirmed. It is so ordered.

Costs to respondents.

MOFFAT, C. J., and LARSON, McDONOUGH, and PRATT, JJ., concur.